TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00706-CR







Derek Miller, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0954262, HONORABLE FRED A. MOORE, JUDGE PRESIDING







 Derek Miller appeals from a judgment convicting him of aggravated robbery and sentencing
him to serve five years in the Institutional Division of the Texas Department of Criminal Justice. See Tex.
Penal Code Ann. § 29.02 (a)(2), 29.03 (a)(2) (West 1994). The case was tried before a jury and the jury
assessed punishment. In his first point of error, appellant complains that there was insufficient
corroboration of the testimony of the accomplice witness. In his second point, he contends that the
evidence is factually insufficient to support the verdict. We will affirm the judgment.


BACKGROUND

 Appellant was found guilty of aggravated robbery of a drive-through restaurant upon the
testimony of his accomplice and other witnesses. Appellant's accomplice, Charles Bronner, testified that
in the early morning hours of August 6, 1995, he accompanied appellant to the Short Stop drive-through
restaurant in Austin, that he followed him inside and saw him pointing a handgun at the two employees, that
appellant took the restaurant's money in bank bags, that they got in the car and left, and that appellant gave
him some of the money taken in the armed robbery. There was no dispute that Bronner was an accomplice
witness. The major disputed issue at trial was the identity of the gunman. Bronner's testimony that
appellant was the gunman required corroboration.


STANDARD FOR CORROBORATION

 A conviction cannot be had upon the testimony of an accomplice unless corroborated by
other evidence tending to connect the defendant with the offense committed. Tex. Code Crim. Proc. Ann.
art. 38.14 (West 1979). To determine whether there is sufficient corroboration, the reviewing court
eliminates the accomplice testimony and reviews the remaining evidence to determine whether it tends to
connect appellant to the offense. Colella v. State, 915 S.W.2d 834, 838-839 (Tex. Crim. App. 1995). 
It is not necessary that the corroborating evidence be sufficient in itself to establish appellant's guilt, nor is
it necessary that it directly link appellant to commission of the offense. All that is necessary is that there be
some non-accomplice evidence which tends to connect appellant to the commission of the offense. Gill
v. State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). See In re C.M.G., 905 S.W.2d 56, 58-59 (Tex.
App.--Austin 1995, no writ) (even though police officer could not make positive identification of juvenile
who ran from vehicle, officer's testimony that fleeing suspect looked like juvenile whom officer knew from
patrolling area was sufficient to corroborate in delinquency proceeding).


CORROBORATING EVIDENCE 

 The corroborating evidence shows that in the early morning hours of August 6, 1995, E.
J. Manor, the shift manager, and employee Terrence Sanders were tallying up and cleaning up after closing
the Short Stop drive-through restaurant at midnight. Manor was preparing the night's receipts for deposit
and Sanders was taking the trash outside to the dumpster. Sanders returned accompanied by two men,
one of whom held a handgun pointed at Sanders's head. The gunman did all the talking and the other
robber followed the gunman's directions. The gunman had on a hat with flaps that covered his ears and
wore a black and white bandana over his nose and lower face. The other robber did not wear a mask,
but neither victim recognized him. The gunman demanded the money, appeared to know where the floor
safe was, directed Sanders to lie face down on the floor, and had his accomplice take the bags of money
from Manor, whom the masked man had directed to get the bags out of the safe. The gunman directed his
accomplice to tie Manor to the office chair in which he was sitting, which the accomplice did with three
aprons binding his arms, legs, and mouth. Just before the robbers left, the gunman said: "That's what y'all
get for firing me." The robbers then departed; Sanders got up and released Manor from his bonds and
called the police. Manor called the restaurant manager, who got there before the police arrived.

 Manor testified that he recognized the masked gunman as Derek Miller, a former employee
with whom he had worked at the same restaurant a few times. Manor was aware that Miller had been fired
recently. Manor recognized him by his distinctive eyes and eyebrows, which were not covered by the
gunman's mask. Manor also testified that he recognized Miller's voice. Manor testified that he did not
mention this recognition to the robbers because he thought that he would be killed. He did tell his manager
at the scene of the robbery that the robber with the gun "looked like Derek" and told the policeman who
took the report of the robbery that he recognized the gunman as Derek Miller. The manager testified that
she had fired Miller on June 30,1995, just five weeks before the robbery. Manor testified that Miller was
the only person he knew who had been fired recently. Manor also testified that he had seen Miller earlier
in the evening before the robbery when Miller had driven by and ordered a combo meal at the order
window.

 Sanders knew Miller from work at the hamburger place but did not testify that he
recognized the masked robber to be Miller. Sanders did have an encounter with Miller after the robbery. 
Sanders was in jail himself on an unrelated matter and happened to see Miller there. Sanders testified that
in reference to the robbery, Miller directed the following accusation at him: "[Y]ou are the one that told
on me, you are the one that snitched on me." The use of a term meaning informer or tattler rather than false
accuser supports a reasonable inference that Miller's threatening epithet directed at Sanders shows
consciousness of guilt. See Peoples v. State, 874 S.W.2d 804, 809 (Tex. App.--Fort Worth 1994, pet.
ref'd) (threat to witness admissible to show consciousness of guilt); see Pritchett v. State, 874 S.W.2d
168, 175-176 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd) (statement by defendant to arresting
officer about "snitches" relevant as having tendency to show awareness of culpability).

 In our view, there is sufficient corroboration of the testimony of the accomplice witness. 
The identification testimony by Manor alone would be enough to corroborate Bronner's testimony that the
gunman in the robbery was appellant. Appellant contends that Manor's identification was tentative and
uncertain. While Manor's identification may not have been absolutely certain, he did testify that he
recognized appellant by his distinctive eyes and eyebrows, that he recognized his voice, and that appellant
was the only person he remembered being fired recently. "Even if the identification were not positive, it
need not be positive to provide sufficient corroboration." Cooper v. State, 631 S.W.2d 508, 510 (Tex.
Crim. App. 1982); see Griffin v. State, 486 S.W.2d 948, 950 (Tex. Crim. App. 1972). The testimony
of the restaurant manager that she had fired appellant on June 30, 1995, just five weeks before the robbery,
has a tendency to connect appellant to the offense in light of the masked gunman's parting comment. 
Finally, appellant's calling Sanders a "snitch" is a basis for the jury to infer appellant's consciousness of
guilt. "It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses
which supply the test." Cherb v. State, 472 S.W.2d 273, 281 (Tex. Crim. App. 1971). In the instant
case, the combined and cumulative weight of the evidence, other than that given by the accomplice, is
ample to satisfy the corroboration requirement. Appellant's first point of error is overruled.

FACTUAL SUFFICIENCY OF EVIDENCE

 In point of error two, appellant contends that the evidence was factually insufficient to
sustain his conviction for aggravated robbery. Appellant does not contest the legal sufficiency of the
evidence. In any event, from our review of the evidence on the first point of error, we believe that viewed
in the light most favorable to the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19
(1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). In reviewing the factual
sufficiency of the evidence, we examine all of the evidence, without looking at it in the light most favorable
to the verdict, to determine whether the jury's verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). We
must consider all the relevant record evidence, not just the evidence that supports the verdict. Clewis, 922
S.W.2d at 129; Stone, 823 S.W.2d at 381.

 Appellant contends that Manor's identification of him was equivocal. Manor identified
appellant as the gunman and robber at trial. He was not equivocal. The only equivocation in evidence was
that the investigating policeman testified, when asked why he didn't go hunt down appellant that night,
"Well, we weren't exactly for sure it was Derek Miller. They just thought it was Derek Miller and fit the
description of Derek Miller." The officer also testified that his report showed that both Manor and Sanders
identified the gunman as appellant that night. Manor's manager testified that both Manor and Sanders kept
telling her that "it looked like Derek." At trial, Sanders was unable to identify appellant as the robber. This
was after appellant had confronted him in jail and accused Sanders of being a "snitch." The accomplice
witness was not equivocal about identifying appellant as the gunman. Appellant contends that the
accomplice witness's testimony was unbelievable because it conflicted with that of the victims in several
respects. It is true that Bronner's version of the events were skewed to present himself as an almost-innocent bystander who just happened to tag along while--much to his surprise--his companion drove to
the Short Stop, held a gun on the victims and took bags of money; he also denied that he handled the
money bags or tied up Manor. Although he denied or tried to minimize his personal participation in the
robbery, his overall description of the event followed that of the victims very closely, and his identification
of appellant as the gunman robber never varied. He also admitted pleading guilty to being a participant in
the robbery. Aside from pointing out some inconsistencies in the testimony of the witnesses mentioned,
appellant only refers this Court to his own testimony at trial as the basis for this point of error. Appellant
testified that he had never seen Bronner before, that he did not rob the Short Stop, that he had not been
fired but quit working there, and that on the night of the robbery he had been at home with his mother and
his infant daughter. He testified that his mother had died since the date of the robbery. Frank Fetters was
called as a defense witness and he testified that appellant had worked for him helping truck drivers load
and unload furniture from July 14, 1995, through August 5. He said that appellant told him that he left to
try to go back to school. Fetters was not aware of any problems appellant had as an employee there. 
Fetters was not asked anything about the robbery that occurred at the Short Stop on the same night
appellant left his employment. There were no other witnesses for the defense. Appellant does not refer
us to any other evidence in the record to consider in this determination of factual sufficiency.

 When we review all the evidence, we find that some testimony is contradicted. Appellant's
testimony, which was not corroborated in any way, conflicts with everyone else's version. It is the business
of the jury to resolve such conflicts. In our view, the jury's verdict is not so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. We overrule point of error two.

 The judgment of conviction is affirmed.



 J. Woodfin Jones, Justice 

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed 

Filed: November 6, 1997

Do Not Publish



SUFFICIENCY OF EVIDENCE

 In point of error two, appellant contends that the evidence was factually insufficient to
sustain his conviction for aggravated robbery. Appellant does not contest the legal sufficiency of the
evidence. In any event, from our review of the evidence on the first point of error, we believe that viewed
in the light most favorable to the prosecution, any rational trier of fact could have found th